UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

GREGORY FITZGERALD HOBSON     *     CIVIL ACTION NO. 16-0508

VERSUS     *     MAG. JUDGE KAREN L. HAYES

LEEVELMA PRUDHOMME AND
AMANDA LASHAY TOLLIVER

### MEMORANDUM RULING[1]

Before the court are the following motions: 1) motion for summary judgment [doc. # 80] filed by defendants Leevelma Prudhomme and Amanda Tolliver; 2) motion to amend witness list [doc. # 82] filed by plaintiff Gregory Hobson; and 3) motion to amend exhibit list [doc. # 83] also filed by Gregory Hobson. The motion for summary judgment is opposed. For reasons detailed below, defendants' motion for summary judgment is GRANTED, and plaintiffs' motions are DENIED.

### Background

On March 17, 2016, Gregory Fitzgerald Hobson filed the instant pro se "Complaint for Defamation of Character" against Leevelma Prudhomme in the 4th Judicial District Court for the Parish of Ouachita, State of Louisiana. (Compl.) Hobson alleged that he was a victim of vicious, defamatory attacks perpetrated by Prudhomme – the owner of a certain cell phone number. He further alleged that Prudhomme falsely accused him of stalking, harassment, and violating the terms of a protective order obtained by her daughter, Amanda Lashay Tolliver, that

---

[1] With the consent of all parties, the District Court referred this matter to the undersigned magistrate judge for the conduct of all further proceedings and the entry of judgment, 28 U.S.C. § 636(c). [doc. #s 21-23].

ultimately culminated in Hobson's arrest on charges of stalking and for violating the protective order(s). Hobson asserted causes of action for malicious prosecution, false imprisonment/arrest, defamation, wantonness, negligence, gross negligence, invasion of privacy, and intentional infliction of emotional distress. He requested $262,100 in compensatory and punitive damages, plus declaratory and injunctive relief requiring the retraction of the statements and expungement from his record.

On April 18, 2016, Prudhomme, represented by counsel, removed the case to federal court on the basis of diversity jurisdiction, 28 U.S.C. § 1332. (Notice of Removal). On August 1, 2016, plaintiff amended his complaint to join Prudhomme's daughter, Amanda Lashay Tolliver. [doc. # 10]. Aside from joining Tolliver, the amended complaint simply re-asserted the allegations from the original complaint.

On September 8, 2016, defendants filed an improvident motion to dismiss, which was denied. [doc. #s 19, 25, & 27]. However, upon noticing that criminal charges were pending against Hobson as a result of defendants' alleged defamatory statements that formed the basis for this suit, the court stayed the matter, pending resolution of the criminal charges. *See* Oct. 10 and Nov. 10, 2016, Orders [doc. #s 26 & 31]. Following defendants' desultory responses to the court's repeated entreaties for status reports regarding the underlying criminal proceedings, the court lifted the stay on January 23, 2018, and issued a scheduling order that, *inter alia*, set a pretrial conference for August 15, 2018, and a jury trial on September 17, 2018. [doc. #s 42 & 44].

Apparently, the parties did very little to prepare this matter for trial in the intervening six months between the issuance of the scheduling order and the pretrial conference. In fact, when

they failed to submit a proposed pretrial order as required by the scheduling order, the court was constrained to continue the pretrial conference until the following week. *See* Minutes [doc. # 46]. At the pretrial conference, the court granted permission to defense counsel to file an out-of-time motion for summary judgment on behalf of defendant, Prudhomme, pursuant to defendant, Tolliver's admission that all of the statements at issue in the case were made by her. (Aug. 20, 2018, Minutes [doc. # 49]).

On August 28, 2018, Prudhomme filed a motion for summary judgment seeking dismissal of plaintiff's claims against her. [doc. # 52]. In support of her motion, Prudhomme submitted two statements under penalty of perjury that did not comply with all of the requirements for a declaration under 28 U.S.C. § 1746. The court raised this issue and accorded movant the opportunity to correct the deficiency. [doc. # 61]. When defendant failed to do so, the court denied the motion for summary judgment. (Sept. 6, 2018, Order [doc. # 63]).

Nevertheless, upon review of plaintiff's extensive pretrial submissions and exhibits, the court's earlier impression that plaintiff's defamation claims were not yet ripe was confirmed. Accordingly, the court deferred start of the trial date, and held a September 17, 2018, hearing on the ripeness of plaintiff's claims. *See* doc. #s 67 & 71. At the conclusion of the hearing, the court continued the trial without date, and ordered plaintiff to notify the court when, and if all related state criminal cases were resolved in his favor. (Sept. 17, 2018, Minutes [doc. # 71]). The undersigned further granted defendants leave to file a motion for summary judgment. *Id*.

On October 12, 2018, defendants filed the instant motion for summary judgment, seeking dismissal of plaintiff's claims on the merits. Defendants argue that any statements made by defendants to the authorities regarding Hobson were privileged and protected. In support of their

3

motion, defendants submitted, *inter alia*, two unsworn declarations from Tolliver and Prudhomme, which were undated, and therefore, yet again not complaint with 28 U.S.C. § 1746.

On November 2, 2018, plaintiff filed his opposition to the motion. [doc. # 84]. On November 9, 2018, defendants filed their reply brief. [doc. # 85]. Meanwhile, on October 26 and November 2, 2018, plaintiff filed his respective motions to amend witness and exhibit lists. The matter is ripe.

## Analysis

**I.      Summary Judgment**

a)      Principles

Summary judgment is appropriate when the evidence before the court shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting *Anderson*, 477 U.S. at 247). "The moving party may meet its burden to demonstrate the absence of a genuine issue of material fact by pointing out that the record contains no support for the non-moving party's claim." *Stahl v.*

*Novartis Pharm. Corp.*, 283 F.3d 254, 263 (5th Cir. 2002). Thereafter, if the non-movant is unable to identify anything in the record to support its claim, summary judgment is appropriate. *Id.*

In evaluating the evidence tendered by the parties, the court must accept the evidence of the non-movant as credible and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255. While courts will "resolve factual controversies in favor of the non-moving party," an actual controversy exists only "when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air. Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). There can be no genuine dispute as to a material fact when a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322-323. The non-moving party may not rely merely on the allegations and conclusions contained within the pleadings; rather, the non-movant "must go beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial." *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996). The non-movant does not satisfy his burden merely by demonstrating some metaphysical doubt as to the material facts, by setting forth conclusory allegations and unsubstantiated assertions, or by presenting but a scintilla of evidence. *Little*, 37 F.3d at 1075 (citations omitted).

Moreover, "summary judgment is appropriate in *any* case 'where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant.'" *Little, supra* (citation omitted) (emphasis in original). In sum, "[a]fter the non-movant has been given the opportunity to raise a genuine factual issue, if no reasonable [trier of fact] could find for the non-movant, summary judgment will be granted." *Mississippi River*

*Basin Alliance v. Westphal*, 230 F.3d 170, 174 (5th Cir. 2000) (citation omitted).

The court finds that summary judgment in favor of defendants is appropriate in this case but on a different basis, at least in part, than that advocated by defendants. Specifically, the court finds that plaintiff's claims arising out of defendants' actions that occurred prior to March 16, 2015, either are untimely or premature. For plaintiff's cause of action stemming from Tolliver's reporting plaintiff to the police for violating the terms of a protective order in November 2015, the court finds that plaintiff does not enjoy a viable claim, and that defendants are entitled to judgment as a matter of law. Although the court may render summary judgment sua sponte on the basis of prescription, or any other ground when appropriate, it typically must provide the parties with advance notice. *Terrebonne Par. Sch. Bd. v. Columbia Gulf Transmission Co.*, 290 F.3d 303, 310 (5th Cir.2002). However, notice comes in many forms, and this court consistently has observed that plaintiff's defamation claims are premature. *See* Oct. 12, 2016, Order [doc. # 26]. Moreover, in the order dated October 12, 2016, the undersigned cited a case that dismissed the plaintiff's claim for intentional infliction of emotional distress as untimely. *Id*. (citing *Alexander v. Nixon*, Civ. Action No. 15-2300, 2015 WL 9997250 (W.D. La. Dec. 15, 2015), R&R adopted sub nom. *Edward v. Nixon*, Civ. Action No. 15-2300, 2016 WL 427931 (W.D. La. Feb. 3, 2016).[2]

Certainly, if plaintiff harbors a good faith argument, and/or evidence, sufficient to rebut or overcome this court's analysis and findings as set forth below, he may bring the matter to the court's attention pursuant to a prompt and timely motion for new trial.

---

[2] Indeed, this court's opinion in *Alexander, supra* forms much of the basis for the instant decision.

b) <u>Governing Law</u>

Under the *Erie* doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law." *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427, 116 S.Ct. 2211(1996); *see also Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817 (1938). In diversity cases, federal courts apply state laws on limitations, including accrual, and tolling. *Hensgens v. Deere & Co.*, 869 F.2d 879, 880 (5th Cir. 1989); *Milton v. Stryker Corp.*, 551 F. App'x 125, 127 (5th Cir. 2014) (applying Texas law on accrual in diversity case).

Here, neither side contests that the substantive issues in this case are governed by Louisiana law. *See In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 206 (5th Cir. 2007) (deferring to the parties' agreement that Louisiana substantive law controlled);[3] *Jefferson v. Lead Indus. Ass'n*, 106 F.3d 1245, 1250 (5th Cir. La. 1997) (applied Louisiana law where no party disputed that Louisiana law governed).[4] Furthermore, where, as here, Louisiana's substantive law applies to the merits of an action, then so does Louisiana's law regarding prescription and peremption. La. Civ. Code Art. 3549(A).[5]

---

[3] Hobson cited Louisiana law in opposition to defendants' motion for summary judgment (Pl. Opp. Memo., pg. 7 [doc. # 84]).

[4] In *Jefferson*, the Fifth Circuit's decision incorporated the underlying district court opinion, 930 F. Supp. 241 (E.D. La. May 31, 1996) (J. Vance).

[5] As a court sitting in diversity, choice of law issues are governed by the conflicts rules of the forum state. *See Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U. S. 487, 61 S.Ct. 1020 (1941).
Even if Louisiana's substantive law did not apply, Hobson has not established the presence of "compelling considerations of remedial justice," as required to permit application of the limitations laws of another state. *See* Civ. Code Art. 3549(B)(1); *Henry v. Duane Morris, LLP*, 210 Fed. Appx. 356, 359 (5th Cir.2006).

c)  Plaintiff's Claims Arising from Defendants' Pre-March 2015 Conduct

In Louisiana, the prescriptive period is strictly construed against prescription and in favor of the obligation sought to be extinguished. *Wimberly v. Gatch*, 635 So. 2d 206, 211 (La. 1994). Ordinarily, the burden of proof is on the party pleading prescription. *Lima v. Schmidt*, 595 So. 2d 624, 628 (La. 1992). However, when it appears that the claims have prescribed on the face of the complaint, then the plaintiff has the burden of proof to establish facts which would have the effect of interrupting or avoiding prescription. *Martens v. North*, 1998 WL 378137 (E.D. La. 1998); *Wimberly, supra*.

In Louisiana, delictual actions, including claims for intentional infliction of emotional distress, defamation, false imprisonment and the like, are subject to a liberative prescription period of one year. La. Civ. Code Art. 3492; *Schaefer v. Peralta*, No. 16-17784, 2017 WL 6055153, at *3 (E.D. La. Dec. 7, 2017) (citations omitted). The prescriptive periods begins to run from the day injury or damage is sustained. *Nolan v. Jefferson Par. Hosp. Serv. Dist. No. 2*, 790 So.2d 725, 730 (La. App. 5th Cir. 2001) (citation omitted).[6]

According to the complaint, as amended, defendant(s) filed an affidavit against plaintiff charging him with violating the terms of a protective order(s) on certain dates in September, November, and December 2014, plus January 2015. (Compl., ¶ 11). Plaintiff further averred that he was arrested on September 4, 2014, on charges of forgery, theft, and filing a false document. (G. Hobson Affidavit [doc. # 84-1]). Therefore, by January 2015, Hobson plainly

---

[6] Damages ordinarily are sustained from the date injury is inflicted, so long as the injury is apparent to the victim, even though the extent of damages remains indeterminate. *Collinson v. Tarver Land Dev., LLC*, No. 11-1787, 2012 WL 688551, at *1 (W.D. La. Feb. 1, 2012), R&R adopted, 2012 WL 692193 (W.D. La. Mar. 2, 2012).

had suffered injury stemming from defendants' publication of charges against him from September 2014 through January 2015. Plaintiff, however, did not file the instant suit until more than one year later on March 17, 2016. By that time, and absent an exception, *see* discussion, *infra*,[7] his tort claims stemming from defendants' actions in 2014 and January 2015, have prescribed.

Louisiana recognizes three potential avenues to retard the running of prescription: suspension, interruption and renunciation. *Bouterie v. Crane*, 616 So. 2d 657, 660 (La. 1993).[8] Furthermore, longstanding Louisiana jurisprudence recognizes a limited suspensive exception founded on the ancient civilian doctrine of *Contra non valentem agere nulla currit praescriptio* where "in fact and for good cause a plaintiff is unable to exercise his cause of action when it accrues." *Corsey v. State, Through Dep't of Corr.*, 375 So. 2d 1319, 1321 (La. 1979) (citations omitted). Typically,

> the doctrine of *contra non valentem* suspends prescription where the circumstances of the case fall into one of the following four categories:
>
> 1. Where there was some legal cause which prevented the courts or their officers from taking cognizance of or acting on the plaintiff's action;
>
> 2. Where there was some condition coupled with a contract or connected with the proceedings which prevented the creditor from suing or acting;
>
> 3. Where the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action; and

---

[7] Prescription runs against all persons, including absent persons and incompetents, unless exception is established by legislation. La. Civ. Code Art. 3467-3468.

[8] "A period of suspension is not counted toward accrual of prescription. Prescription commences to run again upon the termination of the period of suspension." La. Civ. Code Art. 3472.

9

> 4. Where some cause of action is not known or reasonably knowable by the plaintiff, even though his ignorance is not induced by the defendant.

*Wimberly, supra*.

The court notes that, as a result of defendants' actions, plaintiff was subjected to pretrial detention for a period of time. Insofar as it could be argued that plaintiff's pretrial detention suspended the running of prescription, this contention most closely tracks *contra non valentem's* third category. *See e.g., Armstrong v. Serpas*, Civ. Action No. 15-808, 2015 WL 5061284, at *3-4 (E.D. La. Aug. 26, 2015). *Contra non valentem's* third exception, however, is limited to circumstances where the defendant *herself* prevented plaintiff from filing suit. *Armstrong, supra* (citations omitted). That circumstance is not present here. Furthermore, the Fifth Circuit has recognized that *contra non valentem* does not suspend prescription during a plaintiff's confinement. *McGuire v. Larpenter*, 592 F. App'x 272, 275 (5th Cir. 2014) (citing *Jackson v. Jefferson Par. Clerk of Court*, 981 So. 2d 156, 161 (La. App. 5th Cir.), *writ denied*, 993 So. 2d 219 (La. 2008)); *see also Stephens v. Shimpf*, 312 F. App'x 676, 677 (5th Cir. 2009) (citing *Kissinger v. Foti*, 544 F.2d 1257, 1258 (5th Cir.1977)).

The foregoing notwithstanding, the Louisiana Third Circuit Court of Appeal has held that prescription on a defamation claim premised on statements made by individuals to the police, was suspended during the pendency of plaintiff's criminal trial based on the same police reports. *Lyons v. Knight*, 65 So. 3d 257, 264 (La. App. 3d Cir.), *writ denied*, 74 So. 3d 215 (La. 2011).[9]

---

[9] The *Lyons* court distinguished *Doughty v. Cummings*, a Louisiana second circuit decision that declined to suspend prescription during the prosecution of a criminal proceeding because the alleged defamatory statements were not made in the judicial proceeding itself. *Id.* (citing *Doughty v. Cummings*, 28 So. 3d 580, 584 La. App. 2d Cir. 2009), *writ denied*, 31 So. 3d 394 (La. 2010)). The third circuit seemingly distinguished *Doughty* on the grounds that the defamatory statements originally were made to an insurance adjuster, rather than directly to law enforcement as in *Lyons*. *See Lyons, supra*. Regardless, however, the language in *Doughty*

The holding in *Lyons* is derived from the rule that "when a suit for damages for libel is based upon allegations contained in another suit, the second suit must await the termination of the action wherein the defamatory averments are made." *Manuel v. Deshotels*, 160 La. 652, 654, 107 So. 478, 479 (La. 1926).[10] Over one-hundred years ago, the Louisiana Supreme Court explained that,

> [a]s the law makes no distinction as to the manner in which the injurious words, in case of libel, are published, it might be argued that where, as in this case, they are used in pleadings filed in court, the prescription of the action for damages runs from the date of the filing. If, however, the court in which the pleadings have been filed eventually holds that the words are pertinent and material to the issue to be decided, or were used with probable cause, we have the same situation as when an alleged malicious prosecution is sustained-the decision relates back to the date at which the words were used, and, in effect, holds that they were lawfully used, and that the damage resulting therefrom is damnum absque injuria, from which it follows that, during the interval, the question, whether the words are, in legal contemplation, injurious, is held in abeyance, and it is only when, by the judgment in the case in which the matter can be determined, it is ascertained that the words are injurious, that the prescription of the action for damages begins to run, since that prescription relates to actions for injurious words."

*Carnes v. Atkins Bros. Co.*, 123 La. 26, 33, 48 So. 572, 574 (La. 1909) (internal quotation marks

---

constitutes dictum because it is apparent that the extra-judicial defamatory statements were made more than one year before the criminal proceedings commenced, i.e., prescription already had run, and therefore, could not be suspended. *See Doughty, supra* (statements were made in early 2003, but plaintiff not indicted until mid-2006).

[10] In another case, the Louisiana Supreme Court noted, with apparent approval, other "decisions in which unfounded prosecutions and untrue affidavits were made, and arrests resorted to, the court generally held that the parties complaining should before suing for damages insist upon the trial of the charge in order to have it determined that it was untrue." *Lebovitch v. Joseph Levy & Bros. Co.*, 128 La. 518, 533, 54 So. 978, 983 (La. 1911).

At least one Louisiana intermediate court has limited the suspension of prescription for defamatory statements made during judicial proceedings solely to defamatory statements made by parties to the lawsuit. *See e.g., Killian v. Irving*, 2010 WL 1253378 (La. App. 1st Cir. Apr. 1, 2010) (unpubl.). However, the only requirement that the supreme court has imposed for suspension is that the person injured by the libel (Hobson in this case) be a party to the litigation where the libel occurred. *Union Serv. & Maint. Co. v. Powell*, 393 So. 2d 94, 100 (La. 1980). Needless to say, Hobson is a party to the pending criminal proceedings against him.

omitted).[11]

This court has not identified an instance where the Louisiana Supreme Court[12] unequivocally has extended the foregoing principle to alleged defamatory statements that preceded and directly precipitated a criminal prosecution. If confronted with the issue, however, the undersigned is persuaded that the Louisiana Supreme Court would hold that prescription is suspended because the same practical considerations that support suspension of prescription for defamatory statements made during litigation, also support suspension of prescription for defamatory statements that sparked the criminal prosecution.

The alternative is unpalatable: an individual maliciously accused of, and prosecuted for

---

[11] In *Robinson Mercantile Co. v. Freeman*, the Louisiana First Circuit Court of Appeal acknowledged the argument that a cause and right of action for libel arises as soon as the libelous matter is published because that is when the damage is sustained – *not* when the statements are proven false. *Robinson Mercantile Co. v. Freeman*, 172 So. 797, 799 (La. App. 1st Cir. 1937). Nevertheless, the court stated that it was bound to follow the Louisiana Supreme Court's determination that an action for libel derived from statements made in a suit must await the outcome of that litigation. *Id*.

[12] To determine Louisiana law, federal courts look to the final decisions of the Louisiana Supreme Court. *Moore v. State Farm Fire & Casualty Co.*, 556 F.3d 264, 269 (5th Cir. 2009) (citation omitted). In the absence of a decision by the Louisiana Supreme Court on a given issue, federal courts are compelled to make an *Erie* guess. *In re Katrina Canal Breaches Litigation*, 495 F.3d at 206; *Howe v. Scottsdale Ins. Co.*, 204 F.3d 624, 628 (5th Cir. 2000). In so doing, the court must use its best judgment to determine
> how [the Louisiana Supreme C]ourt would resolve the issue if presented with the same case. In making an *Erie* guess, we must employ Louisiana's civilian methodology, whereby we first examine primary sources of law: the constitution, codes, and statutes. Jurisprudence, even when it rises to the level of *jurisprudence constante*, is a secondary law source in Louisiana. Thus, although we will not disregard the decisions of Louisiana's intermediate courts unless we are convinced that the Louisiana Supreme Court would decide otherwise, we are not strictly bound by them.

*In re Katrina Canal Breaches Litigation*, 495 F.3d at 206 (internal citations and quotation marks omitted).

alleged criminal wrongdoing would have to file a civil case for defamation within one year of the accusation – notwithstanding the existence of the pending criminal case. The civil court then would face the untenable prospect of deciding the veracity of the accusations potentially before the same issue is determined in the criminal proceeding. Furthermore, if the defendant in a pending criminal case were required to file a civil action for defamation to prevent prescription running on his claim, the existence of the civil suit could have a chilling effect on his accusers.[13]

In response to various show cause orders, plaintiff adduced some evidence indicating that some of the criminal charges arising out of defendants' challenged conduct were disposed of. Upon closer inspection, however, it became manifest that the charges were merged, re-stated, and/or consolidated into a felony case(s), *Louisiana v. Hobson*, Nos. 15F0066 & 14F2566, which remain pending. *See* Pl. Exh. G-5 [doc. # 48-6]; Decline Slips [doc. # 48-13, pgs. 11-14].

Accordingly, the court finds that Hobson's defamation claim against his accuser(s) for the alleged statements made in 2014 and January 2015 remains suspended, and un-perfected or premature throughout the pendency of the timely filed criminal proceeding directly arising out of the defamatory words. *See Calvert v. Simon*, 311 So. 2d 13, 17 (La. App. 2nd Cir. 1975) (out-of-court statements made prior to litigation were related to allegations in suit, and thus, an action for defamation as to out-of, and in-court statements was premature until the litigation was resolved). Similarly, because the prescriptive period for a malicious prosecution claim begins to run only

---

[13] Although a stay of the civil proceedings pending resolution of the criminal case is a possible alternative, the Louisiana Supreme Court did not adopt this practice for defamatory words made during litigation. Moreover, this court already stayed this case for a period of time pending the outcome of the criminal charges. However, it did so at the time because of the existence of other claims, plus the presence of an additional defendant, Ms. Prudhomme. The instant ruling resolves all claims and parties.

after the underlying prosecution is dismissed or terminated,[14] the court further finds that plaintiff's malicious prosecution claim for the alleged statements made in 2014 and January 2015 remains premature. *See Williams v. Higbee Lancoms, LP*, No. 15-2486, 2016 WL 772650, at *4–5 (E.D. La. Feb. 29, 2016) (an element of a malicious prosecution is the bona fide termination of the underlying criminal charge in favor of the present plaintiff).

However, the same result does not obtain for plaintiff's tort claims for false imprisonment/arrest, negligence, gross negligence, invasion of privacy, and intentional infliction of emotional distress ("IIED"). The prescriptive period for these claims ran from the date that injury was sustained. Because the instant suit was filed more than one year later, it was not timely filed, and the claims are foreclosed. *McIntyre v. Theodore*, No. 15-0544, 2015 WL 2250213, at *2 (E.D. La. May 13, 2015) (invasion of privacy); *Ioppolo v. Rumana*, Civ. Action No. 06-0193, 2012 WL 4960385, at *5 (M.D. La. Oct. 16, 2012), aff'd, 581 F. App'x 321 (5th Cir. 2014) (IIED); *Murray v. Town of Mansura*, 940 So.2d 832, 838 (La. App. 3d Cir. 2006) (false arrest and imprisonment arises the day the false arrest and imprisonment occurs).

In addition, this court is not familiar with a cause of action for wantonness available under Louisiana law. When sitting in diversity, as here, the federal court is not at liberty to fashion new causes of action not already recognized by the state courts. *In re DePuy Orthopaedics, Inc., Pinnacle Hip Implant Prod. Liab. Litig.*, 888 F.3d 753, 781 (5th Cir.2018) (citations omitted).

---

[14] *Sahota v. Cobb*, No. 14-2722, 2015 WL 6835480, at *5 (W.D. La. Nov. 6, 2015) (citation omitted).

d) Plaintiff's Claims Arising from Defendant(s)' November 2015 Conduct

In his complaint, as amended, plaintiff further alleged that on November 11, 2015, Tolliver reported to the police that she had three active protective orders against Hobson, but she had seen him walking across the street from Ouachita Valley Credit Union ("OVCU") where she worked. (Amend. Compl., ¶ 12). The responding officer spoke to another OVCU employee, Kenyatta Singelton, who confirmed that she also saw Hobson. *Id*. Moreover, employees at the adjacent business observed a car with a Mississippi license plate that matched the description of Hobson's car. *Id*. In fact, the next day when an officer arrested Hobson, he admitted that he was near Tolliver's job on November 11, 2015, because his lawyer's office was around the corner. *Id*.

There is no question that plaintiff's claims stemming from Tolliver reporting him to the police on November 11, 2015, are timely. However, even accepting plaintiff's allegations as true, it is equally evident that he does not enjoy a viable claim for relief against defendant(s). In Louisiana, privilege is a defense to a defamation action. *Kennedy v. Sheriff of E. Baton Rouge*, 935 So.2d 669, 681 (La. 2006).[15] Moreover, "the elements of the conditional privilege have been described as good faith, an interest to be upheld and a statement limited in scope to this purpose, a proper occasion, and publication in the proper manner and to proper parties only." *Id*. (citations omitted).[16] Indeed, "the qualified or conditional privilege extended to the communication of alleged wrongful acts to the officials authorized to protect the public from such acts is founded on a strong public policy consideration: vital to our system of justice is that

---

[15] Defendants invoked privilege as a defense in their amended answer. [doc. # 77].

[16] There also is an "absolute" privilege, but that is not present here.

there be the ability to communicate to police officers the alleged wrongful acts of others without fear of civil action for honest mistakes." *Id*.

In this case, it is uncontroverted that Tolliver's November 11, 2015, communication to the authorities satisfies the requirements for conditional privilege. Tolliver reported an apparent crime to the police, i.e., Hobson's open violation of a protective order. Moreover, corroborating witnesses supported her report, and even Hobson admitted that he had been in the vicinity. The fact that Hobson may have had a valid reason for being in the area (to see his attorney) does not undermine Tolliver's good faith belief that Hobson violated the protective order(s). *See Holmes v. Lea*, 250 So.3d 1004, 1011 (La. App. 1st Cir. 2018); *Barber v. Willis Commc'ns, Inc.*, 241 So.3d 471, 477 (La. App. 1st Cir. 2017) (defendant entitled to qualified privilege where it terminated plaintiff's employment following an eyewitness account that plaintiff had pocketed money from the cash register).

The fact that corroborating witnesses and Hobson himself confirmed that he was in the vicinity of Tolliver's employment on November 11, 2015, despite the existence of the protective order, also serves to vitiate Hobson's other claims against Tolliver. *See Williams v. Higbee Lancoms, LP*, No. 15-2486, 2016 WL 772650, at *4–5 (E.D. La. Feb. 29, 2016) (no claim for malicious prosecution, IIED, or negligence where the defendant simply presented facts to the authorities in good faith and a prosecutor made an independent decision to bring a criminal charge); *Perere v. Louisiana Television Broad. Corp.*, 812 So.2d 673, 677 (La. App. 1st Cir. 2001) (no invasion of privacy claim as a result of reasonable, accurate publicity merely because it embarrasses or offends); *Kennedy, supra* (no claim for wrongful arrest or false imprisonment where, as here, the defendant did not personally detain the plaintiff); *Menard v. Orkin, LLC*, No.

16

17-0019, 2018 WL 5019960, at *4 (W.D. La. Oct. 16, 2018) (mere inadvertence or honest mistake does not suffice to support a claim for gross negligence).

Because plaintiff's allegations against Prudhomme are no greater than the allegations against Tolliver, his claims against her fare no better. The court further observes that Hobson's claim against Prudhomme appears to be limited to negligently entrusting her cell phone to Tolliver. However, there are no allegations or evidence that Tolliver used Prudhomme's phone to call the police on November 11, 2015. In addition, given the reasonableness of Tolliver's belief that Hobson was violating the protective order, Prudhomme could not have violated any hypothetical duty that she owed to Hobson.

## II. Motions to Amend

Also before the court are plaintiff's motion to amend witness and exhibit lists [doc. #s 82 & 83]. In light of the court's disposition of plaintiff's claims, the motions are DENIED, as moot.

## Conclusion

For the reasons detailed herein, the court finds that there is no genuine dispute as to any material fact, and that movants are entitled to judgment as a matter of law. Fed.R.Civ.P. 56. Accordingly,

IT IS ORDERED that defendants' motion for summary judgment [doc. # 80] is GRANTED.

IT IS FURTHER ORDERED that plaintiff's motions to amend [doc. #s 82 & 83] are DENIED, as moot.

In Chambers, at Monroe, Louisiana, this 8th day of January 2019.

KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE